FILED

2009 Aug-11  AM 09:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

DAVION STOCKDALE,                )
                                 )
            Plaintiff,           )
                                 )
v.                               )        Case No. 2:07-cv-2290-TMP
                                 )
T-MOBILE,                        )
                                 )
            Defendant.           )

### MEMORANDUM OPINION

This matter is before the court on defendant's motion for summary judgment (Doc. #22), filed October 3, 2008.  The motion is supported by a brief and evidentiary submission.  Plaintiff has responded and has submitted evidence in opposition.  The defendant has replied.  Having carefully considered all of the arguments and evidence offered by both parties, the court enters this memorandum opinion regarding the motion for summary judgment.

### STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine

issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  <u>Celotex</u>, 477 U.S. at 322-23.  There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim."  <u>Id</u>. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'"  <u>Id</u>. at 324 (quoting Fed. R. Civ. P. 56(e)).  The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings.  <u>Celotex</u>, 477 U.S. at 324.  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  <u>Id</u>. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The substantive law will identify which facts are material and which are irrelevant.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Id</u>. at 248.  "[T]he judge's function is not himself to weigh the evidence

2

and determine the truth of the matter but to determine whether there is a genuine issue for trial."
Id. at 249.  His guide is the same standard necessary to direct a verdict:  "whether the evidence
presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that
one party must prevail as a matter of law."  Id. at 251-52; see also Bill Johnson's Restaurants, Inc.
v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983).  However, the nonmoving party "must do more than
show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co.,
Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  If the evidence is merely colorable, or is not
significantly probative, summary judgment may be granted.  Anderson, 477 U.S. at 249 (citations
omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989).  Furthermore, the court must
"view the evidence presented through the prism of the substantive evidentiary burden," so there must
be sufficient evidence on which the jury could reasonably find for the plaintiff.  Anderson, 477 U.S.
at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988).  Nevertheless,
credibility determinations, the weighing of evidence, and the drawing of inferences from the facts
are the function of the jury, and therefore the evidence of the non-movant is to be believed and all
justifiable inferences are to be drawn in his favor.  Anderson, 477 U.S. at 255.  The non-movant need
not be given the benefit of every inference but only of every reasonable inference.  Brown v. City
of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).


FACTS

For purposes of summary judgment, the following facts are considered undisputed, or if
disputed, taken in a light most favorable to the non-moving plaintiff.  Plaintiff Davion Stockdale was

hired by defendant T-Mobile in December 2004 as a temporary, seasonal retail sales representative at the defendant's retail store located on Highway 280 ("the 280 store"). The store manager and Stockdale's supervisor was Bruce Craig. Both Craig and Stockdale are African American males. On March 31, 2005, Stockdale was promoted from his temporary part-time position, which has been described as a seasonal job, to a regular part-time position. Craig authorized the promotion. Stockdale did not apply for the new position using defendant's online OneVoice system.

In February of 2006, Craig transferred to T-Mobile's Center Point store, and Chris Crisson became the manager for the 280 store at which Stockdale worked. Crisson also managed a nearby T-Mobile store known as the RELO store. The RELO store was considered a branch of the 280 store. While Crisson managed the 280 and RELO stores, he hired or promoted at least 20 employees. Ten of them were African-American, and seven were African American males.[1] Stockdale has never heard Crisson make any racial slurs or discriminatory comments, although Stockdale, Craig, and other witnesses have expressed the observation that Crisson does not seem as friendly toward African American employees as he does toward white employees. Stockdale never complained to any supervisor at T-Mobile, or to T-Mobile's human resources department, about any alleged race discrimination.

In 2006, Stockdale requested a transfer from Crisson's 280 store to the Center Point store, which Craig then managed. Transfers must be approved by the store manager where the employee works, and transfers are lateral moves and do not result in a change in pay are not jobs for which

---

[1]     Stockdale does not contend that Crisson had racial animus toward all African Americans, but only African American males. Accordingly, his allegations might be more properly construed as some hybrid form of race and gender claims.

4

employees must apply.  Crisson denied Stockdale's request for a transfer to Center Point.  Stockdale said Crisson told him: "I had to quit before he'd let me go."  (Stockdale Depo., p. 39).  Crystal Gilbert, a Caucasian female employed at the Center Point store, was allowed to transfer from the Center Point store to the 280 store, and either Crystal Gilbert or Destiny Gilbert was allowed to transfer from the 280 store to the Trussville store.  The transfer from the Center Point store would have been approved by Craig, but the transfer from the 280 store to the Trussville store had to be approved by Crisson.  Plaintiff does not allege, however, that any employee transferred *from* the 280 store to Center Point, as Stockdale wanted to do.  Crisson did approve the transfers of at least five employees working for him at the RELO store: three African American males, one African American female, and one Caucasian male.   Crisson also allowed plaintiff to move from the 280 store to the RELO store, although it is not clear this constitutes a transfer as the stores are associated with one another.

T-Mobile policy requires employees to apply for promotions or job changes that result in a different pay and classification. T-Mobile has an online system for posting job openings called OneVoice, where employees can research and for apply for posted jobs online.  T-Mobile employees can maintain a "profile" on OneVoice, including a resume, which can be updated periodically and submitted in connection with online applications.  Stockdale was familiar with the website used for job postings, and had visited the website as an employee.  Bruce Craig has testified, however, that the online posting did not begin until "later in 2006."  Prior to that, Craig said, managers would  tell their employees about openings in the store where they worked.  Craig said he would personally "tell an employee to apply for [a specific] job and then close the job and sit there and hire the internal

candidate."  The usual ladder of promotions involved beginning as a part-time sales representative, moving to full-time, then to assistant manager, then to manager.

In or around April 2006, during an interview for a job being applied for by Clark, Crisson told DeJuan Clark that Stockdale was not a team player, and that, if he had his way, Stockdale would "be gone."  Clark is an African American male, and was hired by Crisson following the application process.

In July 2006, Crisson hired Taylor White, a Caucasian male, for the position of assistant manager at the RELO store.[2]  White, an external candidate not previously employed by T-Mobile, applied for the position, along with 38 other candidates.  Stockdale did not apply for the position because he was "not aware of it," and has testified that he was "not informed" that RELO was getting an assistant manager until after White was hired.  The position was posted on the T-Mobile Jobs website on May 2, 2006, and 39 candidates applied.  Crisson has stated that he hired White because of his experience in running his own business, his good communication skills, and his outgoing personality at the interview.  Crisson further has testified that he would have chosen White over Stockdale, even if Stockdale had applied, because of White's qualifications.  Both Stockdale and Goode say they had to train White for the job.[3]  Goode has testified that Crisson said the decision

_____

[2]    Some of the evidence submitted, including Stockdale's affidavit, refers to White as being hired as assistant manager of the 280 store.  Kerry Goode's affidavit provides an explanation: that the assistant manager position was one as an assistant to Crisson, who was manager of both stores, but that the assistant manager's primary duty was to act as manager at the RELO store.

[3]    The evidence relating to the time-frame is confusing.  Goode testified that he was first hired at the 280 store in April 2006 and moved to the RELO store seven months later, or about November 2006.  He also testified that plaintiff moved the RELO store four months later, or about March 2007.  Yet, it is undisputed that White was employed at the RELO store from July 2006 to February 2007.  If this is correct, it would seem unlikely that Goode and plaintiff had enough contact

to hire White was his boss's decision (i.e., Chad Hathorne, the regional manager), and that White

had not made the requisite score on his qualification test to merit the position.[4]

In August of 2006, Stockdale requested a transfer from the 280 store to the RELO store.

Stockdale wanted to transfer because RELO was open fewer hours per week and fewer days per

week.  He expected to get 30 hours of work per week, while still working fewer hours at night or on

the weekends.  Stockdale said the schedule at the RELO store would provide him with more hours

of work, yet give him a schedule that accommodated his childcare responsibilities.[5]  Crisson granted

Stockdale's transfer request and transferred Stockdale to the RELO store late in August 2006.

Stockdale said that Crisson allowed him to transfer "to kind of convenience me due to the fact there

was not a full-time position available."  Stockdale said the transfer helped him in that he got to work

more hours, while still starting later and finishing earlier.  He did not have to apply for or fill out any

paperwork to effectuate the transfer because, as T-Mobile explains, this did not involve a change of

pay or title.  Stockdale remains employed at T-Mobile's RELO store as a part-time employee.

Prior to the August 2006 transfer, Stockdale expressed to Crisson a desire to have a full-time

position at the 280 store.[6]  Crisson told him that there were no full-time positions available at that

with White to provide him with training.  Also, Stockdale's own testimony is that he transferred to
the RELO store in August 2006, not March 2007, as Goode testified.

    [4]    T-Mobile disputes plaintiff's allegation as to the minimum test grade, and asserts that
White's score was sufficient to merit the position.

    [5]    At times relevant to this motion, the Highway 280 store was open 9:00 a.m. to 8:00
p.m. on Monday through Saturday, and Noon to 6:00 p.m. on Sunday.  The Relo store was open
Monday through Saturday from 10:00 a.m. to 6:00 p.m., and was closed on Sunday.

    [6]    Although plaintiff's brief argues that he asked about a full-time position at either
store, plaintiff's deposition clearly states that he was asking about a position at the 280 store, where

time.[7]  A couple of months later, Stockdale asked the regional manager, Chad Clark, whether he could obtain a full-time position.  He also expressed to Clark an interest in T-Mobile's career development program ("CDP").  Placement in the CDP requires nomination by the employee's manager.  Clark promised Stockdale he would nominate him for the next opening in the CDP, but Clark was no longer in that position when the next CDP openings became available in 2008.  Stockdale was never nominated for the CDP.  Crisson has testified that he did not nominate Stockdale because Stockdale had not sought additional training and had told him that he did not want to take on additional responsibilities.  Both Clark and Crisson are Caucasian males.  Crisson did nominate three employees to the CDP in 2008; one African American male (Jay King), one Caucasian female, and one Caucasian male.  Crisson has testified that all three employees had expressed the desire to receive additional training and communicated well with other employees and with management.[8]

_____

he then worked.  An inference that his interest in full-time work was broader than the single store may be appropriate, however, since he had expressed interest in transfers and he asked the regional manager about full-time positions.

[7]       Plaintiff alleges that Crisson told him that there would never be any full-time positions available, but Crisson's statement, even viewing it in the light most favorable to the plaintiff, most reasonably could be construed to mean that the only positions available at that time were part-time positions.  It is clear to the court that Stockdale's inquiry and Crisson's response were about jobs that were available at that time, and could not reasonably be construed as a promise or prediction about T-Mobile's hiring practices in the future.  Even assuming that Crisson indicated T-Mobile was moving toward a workforce of only part-time sales representatives, there is no evidence that Crisson was making a false statement, or that he was making a statement that had any racial animus behind it.

[8]       Stockdale admits that both Crisson and Michelle Barnett at times offered to teach him or coach him on additional duties and that he declined the offers.  He once told Barnett that he did not want to be coached.  When she tried to teach him to count the inventory, he told her it was not his responsibility, but hers.  He also told her she should chill out.

In February 2007, Zach Wallace, a Caucasian male, was promoted to a full-time position sales at the 280 store.  When Stockdale complained, Crisson told him that Clark had made the decision to promote Wallace, but when Stockdale contacted Clark, Clark told him that Crisson had made that decision.  Stockdale was never told that he had not been hired because he did not apply for the position.  Stockdale did not see a posting for the full-time position to which Wallace was hired, but also admits that he did not check the website.[9]  At the time, Wallace had worked for T-Mobile for only six months, while Stockdale had been employed there for more than two years. Wallace was the only "internal" candidate to the apply for the job.  Stockdale expected his store manager to tell him about any openings since that is the way Craig had handled job openings.[10]  It is undisputed that Stockdale never applied for the position, and that Wallace did apply online through the OneVoice system.  Crisson has stated that he hired Wallace because he had prior supervisory experience, took on additional responsibilities, and communicated well. Crisson would not have promoted Stockdale to that job even if Stockdale had applied because he felt Wallace was more qualified.

Chad Clark told Stockdale that if he wanted a promotion to full-time he should apply.  He asked Stockdale if he wanted to transfer to the Highway 31 store as a part-time representative, so that

_____

[9]     Whether the position was posted is a disputed fact.  Stockdale "didn't see" the posting, and has submitted affidavits from employee Kerry Goode, who said he checked the website every day and did not see the posting, although he further states that the job listings were not identified by store, but merely as full- or part-time, and "Birmingham area." T-Mobile has submitted evidence that the job opening was posted on the website for 23 days and that 55 applications were filed for that position.

[10]    T-Mobile's human resources officials have stated, however, that the job was posted for 23 days on T-Mobile's website, and that 55 applications were received.  All but Wallace were external candidates.

9

he would be the "first one" in line if a full-time position opened, but Stockdale declined.  He declined opportunities to transfer to other stores as a part-time representative because there was "no guarantee" that any full-time positions would become available in the near future.  In April 2007, Crisson sent an email to Stockdale informing him of an opening for a full-time position with T-Mobile at the Highway 31 store, and encouraged him to apply online.  Stockdale did not apply.  Stockdale says the reason he did not apply was because he would have to work more hours at the Highway 31 store.

Crisson has testified that at times he needed employees from the RELO store to work at the 280 store when the 280 store was short-handed or very busy.  Other employees volunteered, but Stockdale did not.  He told Crisson he preferred working at RELO over the 280 store, and said he was "just fine" at RELO.  He has referred to RELO as a "laid-back" store, and has said that he likes the low-traffic atmosphere of RELO over the busier 280 store.

On May 10, 2007, Stockdale filed a charge of discrimination with the EEOC, alleging that he was denied a transfer and denied a full-time position on March 31, 2007,[11] based on his race.  On August 22, 2007, Stockdale filed a second EEOC charge asserting that he had been retaliated against since the filing of his first charge in that his hours were reduced and he had been refused overtime.  That charge of discrimination does not mention a bad evaluation or denial of a pay increase.  In

---

[11]     His reference to the full-time position appears to be the position for which Zach Wallace was hired, because he references a white male with six months of experience.  His EEOC charge does not contain any reference to the 2006 hiring of an assistant manager at the RELO store, which was filled by Taylor White.

September 2007, Stockdale received an unfavorable employee review which was completed by Crisson.  Stockdale did not receive an annual raise in 2007.

On December 19, 2007, Stockdale filed the instant complaint commencing this action.  In the complaint, he alleges theories of employment discrimination based on race, retaliation, and a state-tort claim for negligence supervision or training with respect to Crisson's employment as his supervisor.


## DISCUSSION

Defendant T-Mobile seeks summary judgment on all of plaintiff's claims.[12]  Defendant asserts that plaintiff has failed to prove a *prima facie* claim of racial discrimination or retaliation, and that, even if the *prima facie* showings were made, the plaintiff has failed to show that the stated, non-discriminatory reason for failing to promote plaintiff was pretext, and that the real reason was violative of Title VII.

.

### A.  Request for Transfer to Center Point Store

Stockdale first alleges that T-Mobile discriminated against him on account of his race in that Crisson denied his request to transfer from the Highway 280 store to the Center Point store.[13]

---

[12]    Although the motion seeks summary adjudication on all claims, the brief does not specifically address plaintiff's state-law claim of negligent supervision.

[13]    Plaintiff does not specify the exact time in which he sought the transfer to Center Point, but because it was while he was working at the Highway 280 store, it was necessarily prior to August 2006.  It thus appears that such a claim may be time-barred, but defendant has not sought dismissal on grounds of the statute of limitations.

Title VII prohibits discrimination with respect to an employee's "compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Specifically, the statute provides that it shall be unlawful for an employer:

> to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a)(1). A plaintiff may prove a *prima facie* case of discrimination by establishing that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he is qualified to do the job he was denied; and (4) his employer treated similarly situated employees who are not members of the protected class more favorably. See Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999). A disparate treatment claim requires proof of discriminatory intent, either through the use of direct or circumstantial evidence. See, e.g., Equal Employment Opportunity Commission v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1286 (11th Cir. 2000).

In order to establish a *prima facie* case of race discrimination, a plaintiff may present to the court: (1) direct evidence that "discriminatory animus played a significant or substantial role in the employment decision," Eskra v. Provident Life and Accident Ins. Co., 125 F.3d 1406, 1411 (11th Cir. 1997), or (2) circumstantial evidence of discrimination, in accordance with the four-part test set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), or (3) statistical evidence of a pattern of discrimination. Zaben, 129 F.3d at 1457. Direct evidence

is evidence that establishes the existence of discriminatory intent behind the employment decision without requiring the factfinder to make any inferences or presumptions.  Carter v. City of Miami, 870 F.2d 578, 580-81 (11th Cir. 1989).  Where there is no direct evidence, the plaintiff must prove intent through circumstantial evidence in accordance with McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).  When the plaintiff relies upon circumstantial evidence, rather than direct evidence, he creates a presumption of discrimination by establishing a prima facie case.  The presumption may be rebutted, however, if the employer offers a legitimate, nondiscriminatory reason for the employment action.   Once the nondiscriminatory reason is articulated, the burden shifts to the plaintiff to show that the reason is either not worthy of belief, or that, in light of all the evidence, a discriminatory reason more likely motivated the decision than the proferred reason.  Standard v. A.B.E.L. Servs. Inc., 161 F.3d 1318, 1331-33 (11th Cir. 1998) reh'g and reh'g en banc denied, 172 F.2d 884 (11th Cir. 1999), citing Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997), cert. denied, 118 S. Ct. 685, 139 L. Ed. 2d 632 (1998).  Under Title VII, a "plaintiff always bears the ultimate burden of proving discriminatory treatment by a preponderance of the evidence." Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990).

It is not the duty of this court to evaluate whether the employment decisions made with respect to Stockdale were fair or wise; employers are free to make unfair or unwise employment decisions so long as they do not violate anti-discrimination statutes.  See Elrod v. Sears, Roebuck and Co., 939 F.2d 1466, 1470 (11th Cir. 1991).  Questionable business judgment is not evidence of discrimination.  See id.  Moreover, courts have recognized that the discrimination laws should not

be used to override employment decisions "based on individual assessments of a person's abilities, capabilities, or potential." Magruder v. Selling Area Mktg. Inc., 439 F. Supp. 1155 (N.D. Ill. 1977).

Although plaintiff has offered observations of some witnesses that suggest that Crisson disfavored black male employees, he has not presented any direct evidence of race discrimination with respect to any particular employment decision. Consequently, to establish a *prime facie* showing of discrimination, plaintiff must use the McDonnell Douglas model for circumstantial evidence.

Plaintiff has shown that he is a member of a protected class because of his race, African American. As to his claim that he was discriminatorily denied a transfer to the Center Point store, however, plaintiff has failed to meet any of the other elements of a *prima facie* case. He has not demonstrated that the transfer, which was neither a promotion nor a pay raise, constituted an "adverse employment action." The Eleventh Circuit Court of Appeals has held that "to prove adverse employment action in a case under Title VII's anti-discrimination clause (as distinct from the retaliation clause), an employee must show a serious and material change in the terms, conditions, or privileges of employment. Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." Davis v. Town of Lake Park, 245 F.3d 1232, 1239 (11th Cir.2001).[14] In Davis, the court rejected the appellant's

---

[14]    Although the standard for assessing what is an adverse employment action has changed with respect to retaliation claims, see Burlington Northern & Santa Fe Ry. v. White, 548 U.S. 53, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006), the Eleventh Circuit continues to use the "materially adverse" standard with respect to disparate treatment claims. See Osahar v. Postmaster General of U.S. Postal Service, 263 Fed. Appx. 753, 761, n. 8 (11th Cir. Jan. 15, 2008)("The Court

argument that he suffered an adverse action because he had not suffered a tangible injury, such as

a loss in benefits, ineligibility for promotional opportunities, or formal discipline.  245 F.3d at 1241.

The standard for assessing whether an action is adverse is clearly objective, and not whether "the

plaintiff might have had a subjective preference" for the other position.  Doe v. DeKalb County

School District, 145 F.3d 1441, 1448-49 (11th Cir. 1998)(Employer's action in requiring a teacher

to transfer to a different classroom, even though transfer required additional coursework, could be

actionable only where a "reasonable person would deem [the transfer] materially adverse").  See

also,  Barnhart v. Wal-Mart Stores, Inc., 206 Fed. Appx. 890, 893 (11th Cir. 2006)(lateral transfer,

or refusal to give such a transfer, that does not result in pay decrease, less responsibility, or loss of

prestige is not an adverse employment action).  The Eleventh Circuit Court of Appeals has noted:

> It is important not to make a federal case out of a transfer that is *de minimis*, causing
> no objective harm and reflecting a mere chip-on-the-shoulder complaint.  However,
> it is equally important that the threshold for what constitutes an adverse employment
> action not be elevated artificially, because an employer's action, to the extent that it
> is deemed not to rise to the level of an adverse employment action, is removed
> completely from any scrutiny for discrimination.  In other words, where the cause or
> motivation for the employer's action was clearly its employee's disability, a finding
> that the action does not rise to the level of an adverse employment action means that
> the action is not scrutinized for discrimination.  An artificially high threshold for
> what constitutes an adverse employment action would undermine the purposes of the
> statute by permitting discriminatory actions to escape scrutiny.  We believe that the
> purposes of the statute are appropriately served by requiring the fact finder to
> determine whether a reasonable person would consider the action adverse under all
> the facts and circumstances.

---

clarified that its discussion of the standard for an adverse employment action with regard to
retaliation claims did not apply to substantive discrimination claims brought pursuant to Title VII.").

Doe, 145 F.3d at 1453, n. 21.

In this case, although plaintiff wanted to work at the Center Point store, and clearly preferred to be supervised by Craig instead of by Crisson, there is no evidence that the transfer was anything more than a lateral move without a pay increase, change in duties, or enhancement of prestige. Moreover, there is a difference in an employer's active decision to transfer an employee to a location where he does not wish to go, and a mere failure or refusal to grant a request for a transfer to another location where the employee seeks to be placed.  For the court to scrutinize the latter type of decision too closely would create a burden on employers by giving employees the power to demand change in the status quo, as opposed to simply preventing employers from taking discriminatory actions. The plaintiff fails to cite any case in which the failure to transfer an employee from one location to one he or she prefers, and the court has not found any precedent for such a broad holding. Furthermore, there is no evidence that the failure to transfer created any objective harm to Stockdale. Although he asserts that there would have been an opening for an assistant manager position at the Center Point store in the near future, he has not demonstrated that he was prevented from applying for, or being promoted to, such a position because he was not transferred to the store.  To the contrary, the evidence shows that such positions were posted on the OneVoice website and that applications were taken from any internal candidate who applied.  Plaintiff never asserts any such position did become available at Center Point, or that he applied and was denied the promotion. Plaintiff thus fails to demonstrate a *prima facie* case because he has not shown that the failure to approve a transfer was an adverse employment action.

16

Even if the refusal to transfer were an adverse action, plaintiff's claim would not survive the defendant's motion for summary judgment.  Plaintiff has failed to demonstrate that the reason his transfer was not allowed was based on racial animus.[15]  Plaintiff must present some evidence from which it can be inferred that the refusal to allow his transfer was racially motivated.  He was allowed to transfer from the Highway 280 store to the RELO store, and received Crisson's approval for that transfer.  The only other lateral transfer he can specify is a Caucasian employee who was allowed to transfer *from* the Center Point store.  Plaintiff has not alleged, much less provided evidence to support a finding, that any other employee was allowed to transfer from the Highway 280 store to the Center Point store at any time when he was seeking that transfer.  His allegation that Crystal Gilbert transferred *to* the Highway 280 store cannot be construed as a comparator situation, since Gilbert sought to leave the Center Point store, and plaintiff sought to transfer into the Center Point store, and also because Gilbert's supervisor was a different store manager.  His bald allegation that "white employees were freely allowed to transfer" simply is unsubstantiated.[16]  Accordingly, plaintiff has failed to demonstrate that the denial of a transfer was an action prohibited by Title VII and the defendant is entitled to summary judgment on this claim.

---

[15]    Plaintiff does offer evidence, in the form of lay opinion of other T-Mobile employees or former employees, that Crisson generally treated white employees more favorably than he treated black employees.  This evidence will be discussed *infra*.

[16]    The court is not taking the position that a refusal to transfer could never be a discriminatory action under Title VII.  If this were a case in which plaintiff had presented strong evidence of discriminatory animus, as opposed to mere opinion from other employees, that Crisson treated white employees differently, and compelling evidence that the transfer would have resulted in some tangible job benefit, an employer's refusal to transfer might be seen as a prohibited act of discrimination.  This, however, is not such a case.

B.  Promotion to Assistant Manager at RELO Store

The plaintiff asserts that he was denied a promotion to assistant manager in July 2006 because of his race.  Defendant asserts that Stockdale never applied for the assistant manager position filled by Taylor White, and that, even if he had applied, Crisson would have selected White because he had previously owned his own business and because Crisson was impressed with his communication skills and outgoing personality.[17]  Stockdale argues that he did not apply because he was not informed of the job opening.  He further argues that White was not as qualified as he was, based on the fact that he had to help train White, who had not worked at T-Mobile before his hiring as assistant manager.

A plaintiff may prove a *prima facie* case of discriminatory denial of a promotion by establishing the following: (1) that he is a member of a protected class; (2) that he was qualified and *applied for* the promotion; (3) that he was rejected despite his qualifications; and (4) that the position was filled with an individual outside the protected class.  Vessels v. Atlanta Ind. School Sys., 408 F.3d 763, 768 (11th Cir. 2005); Hithon v. Tyson Foods, Inc., 144 Fed. Appx. 795, 799 (11th Cir. 2005); Alexander v. Fulton County, Ga., 207 F.3d 1303, 1339 (11th Cir. 2000).[18]  Once the plaintiff has made a *prima facie* showing by presenting circumstantial evidence of discrimination, the

---

[17]     It appears that Stockdale's allegation that he was discriminated against in July 2006 was not raised as an issue in his EEOC charge, but defendant has not asserted that the claim is time-barred or outside the scope of the EEOC charge.

[18]     A *prima facie* showing does not require plaintiff to show that he was more qualified than the persons promoted, although the qualifications may be relevant to rebuttal of defendant's non-discriminatory reason.  Vessels, 408 F.3d at 769.

employer may rebut the presumed discriminatory intent by demonstrating that the promotion decision was made for a legitimate nondiscriminatory reason.

In this case, Stockdale is a member of the protected class and was rejected for the assistant manager position, which was filled by a Caucasian male, Taylor White.  Although the parties offer little discussion of the qualifications for the position, plaintiff argues that because he knew more about T-Mobile procedures (in that he had to train White) and scored higher on a T-Mobile test, he was more qualified than White.  Defendant does not directly dispute the element of qualification.[19] At issue, then, is whether Stockdale can maintain an action based on a failure to promote where he never applied for the promotion.

As a general rule, a plaintiff seeking to prove a *prima facie* case of discrimination in hiring or promotion must demonstrate that he "applied for and was qualified for" the job.  Carmichael v. Birmingham Saw Works, 738 F.2d 1126, 1130-31 (11th Cir. 1984), quoting McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct.1817, 1824, 36 L. Ed. 2d 668 (1973).  In Carmichael, the Eleventh Circuit Court of Appeals carved out an exception to the requirement of application. The plaintiff in Carmichael, an African American, was employed at a small company with an "overwhelmingly" Caucasian workforce.   The technique the company used for promotion opportunities was to give notice solely by "word of mouth."  This "word of mouth" communication took place most often at lunch breaks, where the white employees ate together.  The plaintiff demonstrated that the few black employees were made to feel uncomfortable and were effectively

---

[19]     Because the position White filled was a managerial position, and because Stockdale does not argue that he had any managerial experience, it does not necessarily follow that Stockdale was qualified, but the court assumes for purposes of this motion that he was qualified.

excluded from the lunch gatherings.  Accordingly, the appellate court noticed, the plaintiff had "no means, within his own knowledge," of evaluating whether the employer had considered him for an opening.  The court further noted: "When an employee had no notice of or opportunity to apply for the job, such reason for rejection [failure to apply] is 'legally insufficient and illegimate.'" 738 F.3d at 1134.  A plaintiff working in an environment with such an informal procedure for promotions need only show that the employer had "some reason or duty to consider him" for the promotion.  738 F.2d 1134.  Carmichael met that burden by demonstrating that he had expressed an interest in promotions within the company and that he had no way of knowing about the particular opening.

The exception was further defined by the Eleventh Circuit Court of Appeals in Cox v. American Cast Iron Pipe Co., 784 F.2d 1546 (11th Cir. 1986), the case upon which plaintiff relies. In Cox, the appellate court reversed the district court's dismissal of gender discrimination claims where the plaintiffs had not applied for the promotions, noting that "nonapplicants may be entitled to relief where the employer's clear policy of exclusion would make an application a useless exercise." 784 F.2d at 1560, quoting International Brotherhood of Teamsters v. United States, 431 U.S. 324, 362, 97 S. Ct. 1843, 1870-71 (1977).  The plaintiffs in Cox were female employees who already had proven that the defendant had a pattern and practice of reserving certain positions for male applicants: they already had "proven that sex discrimination 'was the company's standard operating procedure.'" 784 F.2d at 1559.  In finding that the plaintiffs were not required to show that they had applied for the positions, the court noted that an employee had to show both that he "would have applied but for discrimination" and that he "would have been discriminatorily rejected" if he had applied.  784 F.2d 1560, quoting Teamsters, 431 U.S. at 368 n. 52. The plaintiff further must

show that the employer "continued to hire by word of mouth or other informal methods."  784 F.2d at 1560.

In more recent cases, courts have consistently held expressions of "general interest" in being hired or promoted are not sufficient to remove the need for an application when the defendant has publicized an opening.  See, *e.g.*, Smith v. J. Smith Lanier & Co., 352 F.3d 1342, 1345 (11th Cir. 2002).  Where a defendant has a method for publicizing job openings which is "neither informal nor subjective," a plaintiff must have applied for the position to prove his *prima facie* case.  Gremillion v. Walgreen Co., 2006 WL 1794745, *5 (M.D. Ala., June 28, 2006)(requiring the application where a marquee advertising job openings was "visible to all who passed by, and the website was accessible by the public).  Such a requirement is in keeping with the purpose of the Carmichael exclusion, which should provide relief for plaintiffs who have been "'dissuaded' or 'prevented' from applying," rather than simply providing an easy avenue for those workers who failed to take advantage of the most "obvious method" of seeking the job or promotion.  Wilson v. Walgreen Co., 2006 WL 1794749 *7, (M.D. Ala. June 28, 2006).  It has also been noted that an employer's duty to consider an employee for an opening also may be lessened where the promotion offered is at a different location from the location in which plaintiff was then working.  Freeman v. Walgreen Co., 2006 WL 229869, *4 (M.D. Ala. Jan. 31, 2006).

In the instant case, plaintiff has not provided sufficient evidence that would place him into the exception from the application rule that has been carved out by Carmichael and Cox.  He has not demonstrated that hiring at T-Mobile was conducted by word of mouth or informal means.  He has not shown that the promotions he sought were not posted online.  He has not shown any "clear policy

21

of exclusion," or that he was "dissuaded or prevented" from applying for the position.  In addition, the post filled by White was in a different location than the location at which Stockdale worked at that time.  Moreover, he has failed to show that either he would have applied for the promotions but for discrimination, or that he would have been discriminatorily rejected if he had applied.

Stockdale simply asserts that he never saw the job filled by Taylor White posted online.  He knew the website existed, had been given written notification of the existence of the intranet listings, and had computers available to him at work daily.  T-Mobile offers evidence that the promotions were posted at the online website, and further has demonstrated that the hiring practices at T-Mobile were not generally conducted by word of mouth or other informal methods.  Although one manager, Bruce Craig, has indicated that he would pre-select candidates informally, all of the other evidence indicates that T-Mobile had a practice and procedure of posting jobs, interviewing candidates, and promoting from within,[20] and there is no evidence that the decision-maker in this instance, Crisson, followed any procedure other than the formal posting and online application used by T-Mobile.[21]

Moreover, even if T-Mobile's hiring practices were clearly exclusionary, there is no evidence that Stockdale should have been considered for the job White filled.  At the time the job opened in 2006, Stockdale had not expressed any interested in being an assistant manager, or in moving to the

---

[20]    Craig's affidavit states that prior to "later in 2006 and early 2007" jobs "might be listed on the T-Mobile Intranet or were by word of mouth.  While this statement supports a finding that not all jobs were posted, it does not contradict T-Mobile's evidence that the two jobs at issue were, in fact, posted.

[21]    The court notes that witness Kerry Goode testified by affidavit that he checked the online postings almost daily.  Although he says he never saw any positing for a full-time sales representative position given to Zach Wallace, he offers no evidence about the positing of the assistant manager position.

RELO store.  He did not have any management experience.  He had expressed only a desire for full-time work.  The accepted job path at T-Mobile was for a worker to progress from part-time to full-time, and then into management.  Stockdale has, therefore, failed to show that he was one of the workers that T-Mobile "had a duty to consider" because it knew he might reasonably be interested.  He had not expressed that interest at that time, nor was he readily qualified to the degree that t-Mobile should have considered him notwithstanding the lack of an application for the promotion.  Consequently, Stockdale's claim that he was discriminated against by T-Mobile's hiring of Taylor White is due to be dismissed.  T-Mobile has  produced evidence that Stockdale did not apply, and was not as qualified for the job as Taylor White, who had managerial experience.  Stockdale has failed to demonstrate that T-Mobile had a clear policy of exclusion, or that T-Mobile relied on informal, word-of-mouth methods in filling the position.

Even if Stockdale had met all of the elements of his *prima facie* case of race discrimination in relation to the promotion to assistant manager, his claim still is due to be dismissed.  The presumption of discrimination that is raised by the *prima facie* showing may be rebutted if the employer offers a legitimate, nondiscriminatory reason for the employment action.  Once the nondiscriminatory reason is articulated, the burden shifts to the plaintiff to show that the reason is either not worthy of belief, or that, in light of all the evidence, a discriminatory reason more likely motivated the decision than the proffered reason.  Standard v. A.B.E.L. Servs. Inc., 161 F.3d 1318, 1331-33 (11th Cir. 1998) reh'g and reh'g *en banc* denied, 172 F.2d 884 (11th Cir. 1999), citing Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997), cert. denied, 118 S. Ct. 685, 139 L. Ed. 2d 632 (1998).  He must show not only that the articulated reason is false, but also that the true

reason for not promoting him was discriminatory.  See Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1228 (11th Cir. 1993).  It is not the duty of this court to evaluate whether the employment decision affecting the plaintiff was fair or wise; employers are free to make unfair or unwise employment decisions so long as they do not violate anti-discrimination statutes.  See Elrod v. Sears, Roebuck and Co., 939 F.2d 1466, 1470 (11th Cir. 1991).

The defendant argues that plaintiff's claims are due to be denied for the additional reason that the defendant has offered a legitimate, non-discriminatory reason for its decision to hire White, and Stockdale has failed to show that the reason given is pretextual.  Crisson has testified that White had previously owned his own business, had good communication skills, and performed well in his interview.  Stockdale has failed to demonstrate that these factors are not the true reason that Crisson hired White.  He asserts that White made an unsatisfactory grade on a test given by T-Mobile, and that he was not familiar with T-Mobile's in-store practices.  While plaintiff may quibble with Crisson's evaluation of White's skill or qualifications, such disagreement is not the basis of a showing of pretext.  Rather, Stockdale must demonstrate that "the disparities in qualifications [between White and plaintiff are] of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question."  Ash v. Tyson Foods, Inc., 546 U.S. 454, 457, 126 S. Ct. 1195 (2006)(quoting Cooper v. Southern Co., 390 F.3d 695 (11th Cir. 2004), and overruling Cooper's articulation of a standard that required that the qualifications "jump off the page to slap you in the face.").

What plaintiff in this case argues is not that he was significantly more qualified than White or that no reasonable supervisor could have selected White over plaintiff – which could raise some

24

doubt as to the truthfulness of the employer's articulated reason.  Instead, Stockdale simply asserts that he thinks that the qualities Crisson considered, specifically managerial experience and communication skills, are less important than seniority.  It is exceedingly clear, however, that the role of the federal court "is to prevent unlawful hiring practices, not to act as a super personnel department that second-guesses employers' business judgments." Lee v. GTE Florida, Inc., 226 F.3d 1249, 1254 (11th Cir. 2000).  T-Mobile has the right to set the criteria by which it hires managerial employees, either including seniority or not, so long as the criteria are not illegally discriminatory.  The defendant's motion for summary judgment is due to be granted as to this claim, even if plaintiff did prove his *prima facie* case, because defendant has articulated a legitimate reason for the hiring, and plaintiff has failed to show both that the reason is false *and* that the real reason was a racial animus.[22]

---

[22]     It should be noted that the plaintiff's evidence of racial animus is exceptionally thin. Plaintiff offers, *inter alia*, the affidavit testimony of Bruce Craig that he would be in meetings with Crisson when Crisson had a "look of disgust" when dealing with black males.  Craig offers only one concrete example of Crisson's actions: that Crisson orchestrated a scheme to get him fire so he could "get the Center Point store back."  While the behavior indicates Crisson may have been manipulative and nasty, the incident does not have racial overtones.  It merely indicates that Crisson resented that T-Mobile had taken control of the Center Point store, T-Mobile's busiest location, and given it to Craig.  Other affidavit testimony includes that of Kerry Goode, who speaks primarily to the actions of a different manager at a different store, along with conclusory opinions that Crisson was racist. Similarly, affiant Dedric Wilson, a black male *hired by* Crisson, complains that he was racist because he did not facilitate Wilson's transfer to the Tuscaloosa store.  He also complains that Crisson was racist because Jay King, a black male whom he says Crisson "held in a higher regard" than other workers, was not promoted quickly.  In general, the affiants seems to admit that Crisson hired them, held at least some of them in high regard, and nominated on for the CDP, but was racist because they did not get the transfers or promotions they sought.  It defies logic, however, to believe that Crisson chose to hire more African American males than Caucasian males – or than females of either race – while it was African American males toward whom he had an animus.  While the court has rejected the defendant's arguments that he evidence is inadmissible, it does not necessarily follow that the evidence is sufficient to meet plaintiff's burden.  The evidence must be such that a

C.  Promotion to Full-Time Sales Representative

Plaintiff's second promotion claim involves the promotion of Zach Wallace from part-time sales representative to full-time sales representative at the 280 store in February 2007.  Defendant seeks summary adjudication of the claim on grounds that Stockdale did not apply and that Wallace was more qualified for the position.  The law relevant to these claims has been discussed *supra*.  It is undisputed that Stockdale did not apply for the position Wallace filled.  Stockdale admits he did not check the website for openings, but instead expected to be informed of any openings.  Goode has testified that he did check the website regularly, but did not see the opening posted.  T-Mobile has offered evidence that the opening was posted for weeks and that dozens of people applied for it online.  The question becomes whether T-Mobile had a duty to inform Stockdale about the job opening, based on his repeated inquiries about full-time employment.

This question presents a closer call than the issue raised with respect to the 2006 promotion to assistant manager.  In this case, the promotion came after the request for full-time employment and was a job of the type Stockdale had expressed an interest in.  His manager had at least suggested to him that full-time positions would not be available.  While these facts could support a finding that the application requirement should not apply to Stockdale for this promotion, they must be viewed in the context of the overall work environment.  Stockdale was aware of the T-Mobile website that provided job listings.  He chose not to check the website.

---

reasonable jury could accept as a basis for concluding that Crisson engaged in discriminatory employment decisions, and it simply does not raise to level.

At the time the Wallace position was being filled, Stockdale was not working at the 280 store. He had transferred to the Relo store, and had been working there for over six months. He has testified that he liked working at Relo better than he liked working at 280. When Crisson sought volunteers to work at the 280 store, Stockdale never offered. He has stated that he did not want to work additional hours, or work in the higher-traffic store. The fact that Stockdale had expressed an interest in full-time work must be weighed against the undisputed evidence that Stockdale preferred working at RELO and did not want to work at the 280 store.[23] Those facts do not support a finding that T-Mobile had a duty to inform Stockdale of the 280 opening, or a reason to consider him for the position.

Even if plaintiff should have been considered for the position without applying for it, T-Mobile has offered a non-discriminatory reason for its decision to promote Wallace to the full-time position. Craig has stated that Wallace had prior supervisory experience, took on additional responsibilities, and communicated well with others. Wallace also had applied online. Stockdale has not argued that he had any prior supervisory experience, had sought additional responsibilities, or had equal or superior communication skills.[24] Stockdale simply asserts that he had worked as a part-time sales representative longer than had Wallace. There is no evidence, however, that seniority

---

[23]     The facts also demonstrate that Stockdale was encouraged to apply for a full-time opening at the Highway 31 store, and declined. Because this happened after Wallace was promoted, it does not directly refute Stockdale's assertion that he would have applied for the 280 position, but the reasons he gave for not applying are the same reasons he had earlier given for wanting to work at RELO, shorter store hours and a less busy store.

[24]     These facts also support a finding that the plaintiff's qualifications were not sufficient to give rise to a discrimination claim. See Ash v. Tyson Foods, Inc., 546 U.S. 454, 457, 126 S. Ct. 1195 (2006), and discussion supra.

(as opposed to simply being an existing employee) was given any special weight in T-Mobile's promotion practices.  The Eleventh Circuit Court of Appeals has made clear that a showing of pretext cannot be based simply on a questioning of the employer's wisdom in making the challenged decisions.  Combs, 106 F.3d at 1543.

As evidence that the articulated reason is false, plaintiff points to the fact that, when Stockdale complained that Wallace had been promoted, Crisson told him that Clark (the district manager over Crisson) made the decision.  When Stockdale confronted Clark, Clark told him that Crisson had made the decision.  Stockdale was not told that he didn't get the position because he failed to apply.  While the fact that the decision-makers (and it is undisputed that both Clark and Crisson played a role in the ultimate hire) did not tell Stockdale at the time that he was not hired because he did not apply is sufficient to cast some doubt on T-Mobile's reason, it is not sufficient to meet plaintiff's burden.  The Eleventh Circuit Court of Appeals has explained:

> In order to demonstrate pretext, a plaintiff must show the employer's offered reason was not the true reason for its decision, "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Jackson v. State of Ala. State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005) (quotation omitted). "Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc) (ADEA case); see also Cofield v. Goldkist, Inc., 267 F.3d 1264, 1267 n. 6 (11th Cir. 2001) (noting that the McDonnell Douglas framework applies to both Title VII and ADEA cases).

Freeman v. City of Riverdale, 2009 WL 1510275, slip op.  No. 08-15230 (11th Cir. June 1, 2009). The ultimate burden of proving that the defendant intentionally discriminated, the court reminds, lies

with the plaintiff.   In this case, Stockdale has failed to present substantial evidence that a discriminatory reason more likely motivated Crisson to fail to consider Stockdale for the 2007 promotion.  Neither has Stockale shown that the proffered explanation is unworthy of credence.  The court's job is to consider whether the evidence "presents a sufficient disagreement to require submission to a jury."  Combs, 106 F.3d at 1526.  Given all of the facts about Stockdale's tenure with T-Mobile and Crisson's employment decisions, Stockdale has failed to demonstrate that the articulated reasons for selecting Wallace were false, or that the real reason was based on race.  The absence of an application by plaintiff, his refusal to take on added responsibilities, and his expressed preference for the RELO store over the 280 store all undermine the notion that he was not considered because of his race.  The motion for summary judgment as to this claim is due to be granted.

### D.  Nomination to Career Development Program

Although the subject of nomination to the Career Development Program has been discussed, it is not set forth as a claim in the amended complaint, and was not mentioned in the EEOC charge. It is undisputed that Crisson did not nominate any employees to the CDP until 2008, after the lawsuit was filed, and that there were no CDP openings in 2007.[25]  Furthermore, after defendant sought summary judgment on this claim, plaintiff failed to address the issue in his brief in opposition, and has not argued that there is any material issue of fact as to any discrimination on the basis of

---

[25]    This claim also would be without basis in fact because Stockdale told Crisson in 2007 that he did not want to take on any additional duties, and turned down opportunities to learn new tasks.

placement in the CDP.  To the extent that the complaint may be read to set forth such a claim, it also is due to be dismissed.

E.  Retaliation

The plaintiff alleges in his second EEOC charge (filed in August 2007) that, after he filed his first EEOC charge in May 2007, the defendant retaliated against him by denying him overtime, reducing his hours, and failing to consider him for other promotions.[26]  The complaint does not allege specific retaliatory acts.  In his deposition, the plaintiff asserts that Crisson told other employees Stockdale was not a "team player," and was a trouble-maker.  Crisson also said he wanted Stockdale "gone."[27]  In response to the defendant's motion for summary judgment on this claim, plaintiff apparently has abandoned any claim that he was denied overtime, suffered a reduction in work hours, or has been denied promotion in retaliation for his complaint, as he as presented no

---

[26]    A dispute has developed over whether plaintiff has properly put before the court a retaliation claim based on the assertion that Crisson gave plaintiff a negative performance evaluation in 2007, causing him to not receive an annual pay increase.  The court notes that such an allegation cannot be fairly read in the EEOC charge of discrimination.  Indeed, the second EEOC charge, alleging retaliation, was filed in August 2007, several months before plaintiff was denied a pay increase in early 2008.  Neither the negative evaluation nor the denial of the pay increase had occurred when plaintiff filed the August charge.

[27]    To the extent that plaintiff asserts these actions are retaliatory, that claim is without a foundation in fact.  The affidavit of DeJuan Clark clearly states that Crisson's comments were made in April 2006, more than a year before Stockdale filed his first EEOC charge and before any of the actions Stockdale complains of occurred. They cannot, then, have been made in retaliation for any protected activity.  Furthermore, to the extent that Stockdale attempts to characterize these statements as racially motivated, Clark's affidavit refutes such characterization because the statements were made to Clark, an African American male, while Clark was interviewing for a job with Crisson, for which  Clark was hired by Crisson.  They may evidence that Crisson disliked Stockdale, but they do not contain any suggestion that the dislike was based on race.

evidence whatsoever relating to hours worked, overtime, or denied promotions.[28]  Rather, he argues

that he was given an adverse performance review for the year 2007 and, as a result, did not receive

a pay raise in 2008.  The defendant asserts that the evaluation claim has never been pleaded or

revealed during discovery.

At the outset, the court agrees that plaintiff has not previously pleaded this claim of

retaliation.  It cannot be found in the EEOC charge dated August 22, 2007, nor can it be fairly found

in the allegations of the complaint.  When asked during his deposition to describe every instance of

retaliation, plaintiff failed to mention either the negative evaluation or the lost pay increase.  The

very first time this appears is in plaintiff's opposition to defendant's summary judgment motion.

This  claim of retaliation simply is not before the court and cannot prevent summary judgment

otherwise proper for the defendant.

Even assuming the pleadings can be read so liberally as to encompass this claim, plaintiff has

not presented sufficient facts to suggest the performance review was related to the EEOC complaint.

The plaintiff in a retaliation case under Title VII must show that there is some causal relation

between the statutory protected activity and the adverse employment action.[29]  Sullivan v. National

R.R. Passenger Corp., 170 F. 3d 1056, 1059 (11th Cir. 1999).  The causal link requirement is to be

---

[28]     The Taylor White and Zach Wallace events occurred before plaintiff filed either of
his two charges of discrimination and, therefore, cannot be the "denied promotions" referred to in
plaintiff's retaliation charge.

[29]     The court further finds that Crisson's statements that Stockdale was not a "team
player," was a trouble-maker, or that employees were uncomfortable around him, were not "adverse
employment actions" for purposes of a Title VII retaliation claim.  Such remarks are not the type that
"well might have dissuaded a reasonable worker from making or supporting a charge of
discrimination." .  See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 126 S. Ct. 2405, 165
L. Ed. 2d 345 (2006).

construed broadly, and the Eleventh Circuit Court of Appeals has stated that "a plaintiff need only show that the protected activity and the adverse action were not wholly unrelated." Brungart v. Bellsouth Telecommunications, Inc., 231 F.3d 791, 799 (11th Cir. 2000) (quoting Clover v. Total Sys. Servs., Inc., 176 F.3d 1346, 1354 (11th Cir. 1999). However, to meet even this low threshold of proof of causation, the plaintiff must offer some evidence from which a jury could infer that the protected activity caused the adverse employment action. It is this third element of the *prima facie* case on which plaintiff fails to meet his burden. Plaintiff has failed to point to any evidence of a causal link between his May 2007 charge of discrimination and the allegedly negative evaluation. There is no temporal proximity linking them. After plaintiff filed his charge in May 2007, Crisson performed an evaluation, at the earliest, at the end of the third quarter, or after September 2007. The Eleventh Circuit has said that such periods of three or four months are too great to establish temporal proximity between the protected activity and the alleged retaliation sufficient to prove a causal link. See Grier v. Snow, 206 Fed. Appx. 866, 869 (11th Cir., Oct. 26, 2006)("We have found a three-month interval between the protected speech and an adverse action to be too great, without more, to establish an inference of retaliation.")(citing Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004); Sicilia v. United Parcel Service, Inc., 279 Fed. Appx. 936, 940 (11th Cir., May 30, 2008) (Four months is too great a lapse of time to show a causal link). There simply is no evidence of a causal link, and summary judgment is proper.

Further, there is no evidence that Crisson acted in a retaliatory fashion with respect to plaintiff's performance review. Plaintiff testified by affidavit that he was notified in March 2008 that his performance reviews in 2007 were not good enough for him to receive an annual increase

in pay for 2008.  He was told by Crisson that he had to have a total score of 2.50 or better for the year to receive the annual increase, and he had a score of only 2.34.  (See Plaintiff's Ex. 8).  Plaintiff was evaluated quarterly, receiving scores of 1.80 in the first quarter of 2007, 1.30 in the second quarter, 2.58 in the third quarter, and 2.76 in the fourth quarter. (See Plaintiff's Ex. 6).  T-Mobile has offered evidence, unrebutted by plaintiff, that the first two quarterly evaluations were a function entirely of objective sales data, not a subjective evaluation by his supervisor.  The evaluations in the final two quarters were derived 70% from objective sales data and 30% from plaintiff's supervisor.  These numbers indicate that the evaluations by Crisson in the third and fourth quarters of 2007 did not prevent plaintiff from scoring the requisite 2.50 to receive his annual increase.  In both quarters, the total scores of the evaluations involving Crisson were *above* the requisite 2.50 cut-off.  It was the evaluations in first two quarters, in which Crisson was not involved, that dragged down plaintiff's annual score.  From this it can be seen clearly that, whatever thoughts Crisson had concerning the EEOC charges filed in May and August 2007, he did not cause plaintiff's 2007 annual performance review to fall below the 2.50 minimum for a pay increase.  If anything, the evaluations in the third and fourth quarters *raised* plaintiff's annual evaluation from where it would have been otherwise.

Accordingly, there is simply no evidence which may be construed as giving rise to a presumption that the act was retaliatory.  Moreover, the retaliation claim is subject to summary judgment in favor of the defendant for the same reason as the discrimination claim: the defendant has offered a legitimate, non-discriminatory reason for the denial of a raise, and the plaintiff has completely failed to demonstrate that the reason is pretextual.

F.  Negligent Supervision

In opposition to the motion for summary judgment, plaintiff asserts that defendant has failed to seek summary adjudication of his state-law claim for negligent supervision.  In its reply, defendant asserts that, because it sought summary judgment on "all" claims, the state-law claim was encompassed in the motion, although it is clear that T-Mobile's summary judgment brief does not explicitly argument anything concerning the state law claim.  The court finds, therefore, that because there were no grounds set forth as the basis for a summary dismissal of this claim, and no facts alleged that relate to the supervision of Crisson, the defendant has not moved for dismissal of that claim.  Accordingly, the state-law claim of negligent supervision remains pending, and the motion for summary judgment as to that claim is due to be denied.

Because all federal claims in this case are due to be dismissed, however, there remains no federal jurisdictional ground upon which to exercise supplemental jurisdiction over this remaining state-law claim under 28 U.S.C. § 1367(c)(3).  The plaintiff is therefore DIRECTED to show cause within 14 days why the court should not decline to exercise jurisdiction over the state-law negligent supervision claim and allow plaintiff to reassert such claim in state court.

## IV. CONCLUSION

Accordingly, consistent with the foregoing discussion of the evidence presented and the law governing this action, this court determines that defendant T-Mobile's motion for summary judgment (court document #22) is due to be GRANTED IN PART AND DENIED IN PART.  The motion challenging Stockdale's claims arising under Title VII, that he was subjected to race discrimination

in the denial of two promotions and a nomination to a management training program, as well as his claim that he was subjected to retaliation for filing his May 2007 EEOC charge of discrimination, is due to be GRANTED, and those claims are due to be DISMISSED WITH PREJUDICE.  His sole state-law claim, that the defendant negligently supervised store manager Crisson, is due to be DENIED.

A separate order will be entered in accordance with the findings set forth herein.

DATED the 10th day of August, 2009.

T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE